1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WHITE,<br>CDCR #T-74230,<br><br>                              Plaintiff,<br><br>                    v.<br><br>RAYMOND MADDEN, FRANK<br>SHARPE, J. GALLEGOS, and<br>KATHLEEN ALLISON,<br><br>                              Defendants. | Case No.: 3:22-cv-01428-RSH-BGS<br><br>**ORDER DENYING MOTION FOR<br>TEMPORARY RESTRAINING<br>ORDER**<br><br>[ECF No. 3] |

On September 9, 2022, Plaintiff Keith White filed this civil rights action under 42 U.S.C. § 1983 alleging that prison officials at the Richard J. Donovan Correctional Facility ("RJD"), in which Plaintiff is incarcerated, violated his Eighth Amendment right against cruel and unusual punishment. *See* Compl., ECF No. 1.

On September 19, 2022, Plaintiff filed a Motion for a Temporary Restraining Order (the "Motion"), seeking to prevent the California Department of Corrections and Rehabilitation ("CDCR") from transferring Plaintiff from the Level III facility at RJD where he is currently housed, to any Level IV facility in the State of California. *See* TRO Mot., ECF No. 3. Defendants, who have not yet appeared in the case, filed an opposition. ECF No. 8. On October 13, 2022, the Court held a hearing on the Motion. ECF No. 9. The

Parties then filed additional briefing relating to the Motion. ECF Nos. 10, 13. As explained below, the Court denies Plaintiff's Motion.

## I.    Factual Background

Plaintiff brings his claim under 42 U.S.C. § 1983 against four defendants employed by CDCR: (1) RJD Warden Raymond Madden; (2) Frank Sharpe, a classification and parole representative; (3) J. Gallegos, an RJD correctional counselor; and (4) Kathleen Allison, Secretary of the CDCR. *See* ECF No. 1.

Plaintiff claims that prison officials have labelled Plaintiff a "snitch" and made it known within the prison population that Plaintiff was incarcerated for a sexual offense. *Id.* at 3-4. He further alleges that, despite knowing about safety concerns, prison officials transferred him to a Level IV facility at RJD, where other inmates attacked him on July 2, 2022. *Id.* He claims that gang members subjected him to unspecified sexual harassment and extortion in addition to the assaults. *Id.* Plaintiff alleges that he has since been transferred to a Level III facility at RJD where he is currently safe, but that officials are now considering him for transfer to another Level IV facility, where they allow gang members to operate openly and carry out attacks and murders. *Id.* Plaintiff's Complaint seeks damages and injunctive relief. *Id.* at 10.

## II.    Legal Standard

Federal Rule of Civil Procedure 65 provides that the Court may issue a temporary restraining order where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." A movant must demonstrate that: "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the

public interest." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014).[1] The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing and prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(2) ("PRLA"), courts in "any civil action with respect to prison conditions" may enter a temporary restraining order only if it is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." Congress enacted the PLRA to "revive the hands-off doctrine" and restore "judicial quiescence derived from federalism and separation of powers concerns" to remove the judiciary from prison management. *Gilmore v. California*, 220 F.3d 987, 996-97 (9th Cir. 2000). Accordingly, the PRLA requires courts to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief . . . ." *Id.* at 998 (quoting 18 U.S.C. § 3626(a)(2)).

### III.   Analysis

A.   <u>Likelihood of Success on The Merits</u>

"The first factor [] is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). While a plaintiff carries the burden of demonstrating likelihood of success, the plaintiff is not required to prove their case in full at this stage, rather, only the parts that enable them to obtain the injunctive relief they seek. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

---

[1]   The standard for a temporary restraining order is "substantially identical" to the standard for a preliminary injunction in the Ninth Circuit. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Plaintiff claims a violation of his rights under the Eighth Amendment. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimum civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). Second, "a prison official must have a 'sufficiently culpable state of mind,'" and act with "'deliberate indifference' to inmate health or safety . . . ." *Id.*

Plaintiff has not met his burden of demonstrating that he is likely to succeed on the merits on his claim. The incident that is the focus of Plaintiff's Complaint is a July 2, 2022, attack on Plaintiff by two other inmates, identified in an exhibit to the Complaint as "Hagan" and "Jackson." ECF No. 1-2 at 5. Plaintiff has not shown that Defendants were aware in advance of the attack that either inmate was an enemy of Plaintiff. Indeed, Plaintiff submitted a list of 11 of his documented enemies, as of January 26, 2022, and neither inmate is on the list. ECF No. 10-4 at 2. Plaintiff has not provided evidence of any communication or notice to Defendants regarding inmates Hagan or Jackson preceding the attack. Absent a showing that Defendants knew of a danger posed to Plaintiff and were deliberately indifferent to Plaintiff's safety — or further evidence in support of his other theories of liability that are articulated in a more generalized manner in his Complaint — Plaintiff is not likely to succeed on the merits of his claim.[2]

### B.   Likelihood of Irreparable Harm

Plaintiff claims that he cannot be placed at any Level IV facility because he has enemies at all Level IV facilities. *See* ECF No. 3. In briefing after the hearing, the State reported that a classification staff representative has endorsed Plaintiff for a transfer to Facility B at California State Prison, Los Angeles County ("Lancaster") in Lancaster,

---

[2]   Plaintiff's briefing also alleges that he suffered a second attack later on July 2, 2022, from two other inmates, "Branch" and "Major." ECF No. 10 at 2. The same analysis applies to these two individuals.

California, a Level IV, Sensitive Needs, Enhanced Outpatient yard. ECF No. 13 at 2. According to a declaration submitted by Defendant Gallegos, Plaintiff does not have any known enemies at Facility B in Lancaster. ECF No. 13-2 at 1-2. This is further supported by CDCR's current list of separation alerts for Plaintiff, which does include any individuals housed in Lancaster Facility B. ECF No. 13-3 at 3. Furthermore, although Plaintiff identified at the hearing additional "undocumented" enemies of his, even taking his assertion at face value none of these individuals are housed in Facility B at Lancaster. ECF No. 13-2 at 2. As such, Plaintiff has not demonstrated a likelihood of irreparable harm.

C.   <u>Balance of Equities & The Public Interest</u>

Where the government is the party opposing an injunction, the remaining two factors — balance of the equities and public interest in injunctive relief — tend to merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Both factors weigh in the State's favor.

First, Plaintiff's requested injunction — a statewide ban on placement in a Level IV facility — is unduly broad. The PRLA requires courts to ensure that prospective relief in any civil action related to prison conditions be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Given that the State has identified a Level IV facility that does not house any of Plaintiff's known enemies, or even those particular individuals he describes as undocumented enemies, Plaintiff's requested injunctive relief does not comply with the PRLA.

Second, courts must give a degree of deference to prison administrators. *See Griffin v. Gomez*, 741 F.3d 10, 21 (9th Cir. 2014) ("Courts are 'particularly deferential' to prison administrators' regulatory judgments,' if '[a]ccommodating [a prisoner's] demands would . . . impair the ability of corrections officers to protect all who are inside a prison's walls.'" (quoting *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003)). This deference weighs against the requested temporary restraining order.

Third, the PRLA requires the Court to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A). Here, Plaintiff is not the only one affected by his requested injunctive relief. Plaintiff has a classification score of 255, is classified as a sensitive needs inmate, and is a participant in the Enhanced Outpatient Program for inmates with severe mental health issues. ECF No. 8 at 8-9. The State notes that a prisoner must have a placement score of 59 or less to be eligible for a Level III yard. *Id.* Placing prisoners with Plaintiff's classification score and additional programing needs in lower-level yards places those inmates at risk as well. *See* ECF No. 13 at 7.

Accordingly, both the balance of equities and the public's interest lean in favor of Defendants.

## IV.   Conclusion and Order

For the above reasons, the Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order.

**SO ORDERED.**

Dated: November 1, 2022.

_____
Hon. Robert S. Huie
United States District Judge

6

3:22-cv-01428-RSH-BGS