1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

| | |
|---|---|
| KEITH WHITE,<br>CDCR #T-74230,<br><br>                                  Plaintiff,<br><br>v.<br><br>RAYMOND MADDEN, FRANK<br>SHARPE, J. GALLEGOS, and<br>KATHLEEN ALLISON,<br><br>                                  Defendants. | Case No.: 22-cv-1428-AGS-BGS<br><br>**REPORT AND<br>RECOMMENDATION ON<br>DEFENDANT'S MOTION TO<br>DISMISS PLAINTIFF'S<br>COMPLAINT [ECF NO. 25];**<br><br>**ORDER DENYING PLAINTIFF'S<br>REQUEST FOR APPOINTMENT OF<br>COUNSEL** |

19
20
21
22

Presently before the Court is a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants R. Madden, K. Allison, J. Gallegos, and F. Sharpe. (ECF No. 25.) Plaintiff Keith White filed an opposition to the motion. (ECF No. 29.) Defendants filed a reply. (ECF No. 36.)

23
24
25
26

This Report and Recommendation is submitted to United States District Judge Andrew G. Schopler pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c). For the reasons discussed below, **IT IS RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** with leave to amend.

27
28

I.      **BACKGROUND**

A.      **Plaintiff's Allegations**

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 alleging that prison officials at the Richard J. Donovan Correctional Facility ("RJD"), where he was previously incarcerated, violated his Eighth Amendment right against cruel and unusual punishment. (*See* Compl., ECF No. 1.)[1] Plaintiff names four defendants in his complaint: (1) RJD Warden Raymond Madden; (2) Frank Sharpe, a classification and parole representative; (3) J. Gallegos, an RJD correctional counselor; and (4) Kathleen Allison, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). (*Id.*)

Plaintiff alleges that in 2019, he became aware that correctional officers at the California Institution for Men had labeled him a "snitch" due to his failure to provide information about inmate Jon C. Blaylock, a gang member who was the primary suspect in the murder of Correctional Officer M. Gonzalez in 2005. (*Id.* at 3.) Plaintiff claims that he was initially a suspect in the murder, but the San Bernardino County Sheriff's Office eventually determined that he was not involved. (*Id.*; *id.* Ex. E, ECF No. 1-2 at 8.) Plaintiff states that he entered a Sensitive Needs Yard ("SNY"), which he understood was for inmates with serious safety concerns. (*Id.*) He claims, however, that the SNY was filled with Security Threat Group ("STG") gang members, and he quickly became a target. (*Id.*)

On May 5, 2020, while Plaintiff was at Atascadero State Hospital ("Atascadero"), a psychologist notified CDCR of the threat to Plaintiff's life within all Level IV institutions due to being labeled a snitch in connection with Correctional Officer Gonzalez's murder. (*Id.*) According to a Non Committee Endorsement prepared at Atascadero on May 5, 2020, attached to the complaint, Plaintiff was a security Level IV inmate who was to be transferred to a Level III EOP (Enhanced Outpatient Program)

---

[1] Plaintiff was transferred to California State Prison, Los Angeles County ("Lancaster") on or about November 3, 2022. (*See* Notices of Change of Address, ECF Nos. 23, 24.)

facility at RJD. (*Id.* Ex. A, ECF No. 1-2 at 1.) The form states, "Override to Level III EOP Institution is based on Enemy concerns at all Level IV EOP institutions. Enemy concerns noted at RJD Facility C & E, however placement at RJD Facility A can be accommodated." (*Id.*) A Classification Committee Chrono dated May 19, 2020, attached to the complaint, indicates that the override to a RJD Level III EOP remained appropriate because there were "no Level-IV 270 EOP or Level-IV 180 EOP that can accommodate [Plaintiff's] case factors." (*Id.* Ex. B, ECF No. 1-2 at 3.)

Plaintiff alleges that even though prison officials, including Defendant Sharpe, were aware of the May 5, 2020 endorsement reflecting the safety concerns with RJD Facility C, he was placed in that facility in 2022. (*Id.*, ECF No. 1 at 4.) He asserts that he was subjected to physical assaults, sexual harassments, and extortion by SNY and STG gang members. (*Id.*) On July 2, 2022, Plaintiff was the subject of two two-on-one violent attacks. (*Id.*) He was placed in the Administrative Segregation Unit ("Ad Seg") on July 3, 2022, for safety reasons. (*Id.*) The Ad Seg Placement Notice, attached to Plaintiff's complaint, indicates that Plaintiff was being placed in Ad Seg after he notified custody staff that he could not remain housed on Facility C due to concerns for his safety. (*Id.* Ex. C, ECF No. 1-2 at 5.) According to Plaintiff's Complaint:

> While in Ad/Seg plaintiff was made aware of the fact that correctional officer on facility C put information out on the facility to the STG SNY gang members that plaintiff was incarcerated for a sexual offense involving a minor this was the motivating factor of the July 2, 2022 violent assault of plaintiff, because plaintiff had two very serious strikes against him that required him to be violently removed from the level IV SNY facility. 1) correctional officers labeled him as a snitch, 2) correctional officer made information known to STG gang members that plaintiff was incarcerated for a sexual offense. With plaintiff having past gang affiliation these two allegations against plaintiff are very serious & life threatening especially within the level IV prison environment due to the security threat group SNY gang members being allowed to openly operate and carry out violent assaults, extortions, and even murders due to defendants Raymond Madden, Kathleen Allison, and Frank Sharpe refusing to enforce the CDCR zero tolerance of STG gangs policy thereby causing plaintiff to become one of their many victims.

(*Id.*, ECF No. 1 at 4.)

Plaintiff seeks an injunction preventing transfer to any Level IV SNY facility with STG gang members and precluding transfer from RJD Facility A Level III SNY without prior notice to the court. (*Id.* at 10.) He also seeks damages of $50,000, and punitive damages of $25,000 from each defendant. (*Id.*)

### B.   Procedural History

Plaintiff filed his Complaint and motion to proceed in forma pauperis ("IFP") on September 19, 2022. (ECF Nos. 1, 2.) He simultaneously filed a motion for a temporary restraining order ("TRO") in which he sought to prevent the CDCR from transferring him from the Level III facility at RJD, where he was then housed, to any Level IV facility in the state of California. (ECF No. 3.) The Court granted Plaintiff's motion to proceed IFP on September 26, 2022. (ECF No. 6.) The Honorable Robert S. Huie held a hearing on the motion for TRO on October 13, 2022, and permitted supplemental briefing. (ECF Nos. 9, 21.) Judge Huie denied the TRO motion on November 1, 2022. (ECF No. 14.)[2] Among other things, Judge Huie found that Plaintiff had not shown that Defendants knew of a danger posed to Plaintiff and were deliberately indifferent to his safety with respect to the July 2, 2022 attacks, and thus had not met his burden of demonstrating that he is likely to succeed on the merits on his claim. (*Id.* at 4.) With respect to Plaintiff's contention that he could not be placed at any Level IV facility because he has enemies at all such facilities, Judge Huie found that Plaintiff did not have any known enemies, separation alerts, or "undocumented" adversaries at Facility B in Lancaster, where he had been endorsed for transfer. (*See* ECF No. 14 at 4-5.) Thus, Plaintiff had not demonstrated a likelihood of irreparable harm. (*Id.*)

Defendants presently move to dismiss the claims against them. (ECF No. 25.)

/ / /

---

[2] This case was subsequently transferred to the Honorable Andrew G. Schopler on March 26, 2023. (ECF No. 32.)

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss Under Rule 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure requires that any "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 556 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In determining plausibility, the court is permitted "to draw on its judicial experience and common sense." *Id.* at 679.

When considering a Rule 12(b)(6) motion to dismiss, the court must "accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007). "The court need not, however, accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can

choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

When resolving a motion to dismiss for failure to state a claim, the Court generally limits its review to the contents of the complaint. *Allarcam Pay Television Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995); *see also Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 ("The focus of any Rule 12(b)(6) dismissal . . . is the complaint.") This precludes consideration of "new" allegations that are raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). *Schneider*, 151 F.3d at 1197 n.1 (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2] (3d ed. 1997) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")). However, "[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper without converting the motion to one for summary judgment." *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted). Additionally, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996).[3]

---

[3] Plaintiff's opposition to Defendants' motion to dismiss consists of a memorandum of points and authorities, (*see* ECF No. 29-2), and a 22-page "Plain Statement of Facts:

1      Claims asserted by pro se prisoners, "however inartfully pleaded," are held "to less

2    stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404

3    U.S. 519, 520 (1972). Thus, courts "continue to construe *pro se* filings liberally when

4    evaluating them under *Iqbal*" and "afford the petitioner the benefit of any doubt." *Hebbe*

5    *v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026,

6    1027 n.1 (9th Cir. 1985)).

7       **B.    42 U.S.C. § 1983 Standard**

8       "Section 1983 provides a federal cause of action against any person who, acting

9    under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526

10   U.S. 286, 290 (1999). The statute "offers no substantive legal rights, but rather provides

11   procedural protections for federal rights granted elsewhere." *Roberts v. Klein*, 770 F.

12   Supp. 2d 1102, 1111 (D. Nev. 2011) (citing *Albright v. Oliver*, 510 U.S. 266, 271

13   (1994)). "Section 1983 is a 'vehicle by which plaintiffs can bring federal constitutional

14   and statutory challenges to actions by state and local officials.'" *Naffe v. Frey*, 789 F.3d

15   1030, 1035 (9th Cir. 2015) (quoting *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir.

16   2006)). "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right

17   secured by the Constitution and laws of the United States, and [2] must show that the

18

19

---

20   Supplemental," (*see* ECF No. 29 at 2-23). Plaintiff states that the supplemental facts were

21   necessary because he "made errors of facts with respect[] to time[ ]lines of [his]
admission into a SNY yard, and circumstances leading up to [his] request for TRO and

22   complaint." (*Id.* at 1.) Plaintiff also attaches three declarations and twenty-seven exhibits

23   to his opposition. (*See* ECF Nos. 29-3 through 29-14.) Any new facts or allegations
asserted in Plaintiff's opposition or the "Plain Statement of Facts: Supplemental" have

24   not been considered because they do not constitute pleadings under Rule 7(a). *See*

25   *Schneider*, 151 F.3d at 1197 n.1. Likewise, the Court has not considered the three
declarations and twenty-seven exhibits attached to Plaintiff's opposition, unless

26   specifically indicated otherwise, because the Court's review on a motion to dismiss is

27   generally limited to the complaint. *Allarcam*, 69 F.3d at 385; *see also Schneider*, 151
F.3d at 1197 n.1.

28

1   alleged deprivation was committed by a person acting under color of state law." *Id.* at

2   1035-36 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

3       **C.    Failure to Protect Under the Eighth Amendment**

4        "[P]rison officials have a duty . . . to protect prisoners from violence at the hands

5   of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (citations omitted); *see*

6   *also Labatad v. Corrs. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("The Eighth

7   Amendment requires prison officials to take reasonable measures to guarantee the safety

8   of inmates, which has been interpreted to include a duty to protect prisoners.") (citing

9   *Farmer*, 511 U.S. at 832-33 and *Hearns v. Terhune,* 413 F.3d 1036, 1040 (9th Cir.

10  2005)). "It is not, however every injury suffered by one prisoner at the hands of another

11  that translates into constitutional liability for prison officials responsible for the victim's

12  safety." *Farmer*, 511 U.S. at 834. The failure of prison officials to protect inmates from

13  attacks by other inmates may rise to the level of an Eighth Amendment violation when

14  (1) the official's act or omission was "objectively, sufficiently serious" and (2) the

15  official was subjectively aware of that risk and acted with "deliberate indifference" to the

16  inmate's health or safety. *Id.*

17       "Deliberate indifference is a high legal standard." *Toguchi v. Chung,* 391 F.3d

18  1051, 1060 (9th Cir. 2004). An official must "know[] of and disregard an excessive risk

19  to inmate health or safety; the official must both be aware of the facts from which the

20  inference could be drawn that a substantial risk of serious harm exists, and he must also

21  draw the inference." *Farmer*, 511 U.S. at 837. "'Deliberate indifference entails something

22  more than mere negligence but is satisfied by something less than acts or omissions for

23  the very purpose of causing harm or with knowledge that harm will result.'" *Hearns*, 413

24  F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835) (internal alterations omitted). "[A]n

25  official's failure to alleviate a significant risk that he should have perceived but did not,

26  while no cause for commendation, cannot under [the Supreme Court's] cases be

27  condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

28  / / /

III.    **DISCUSSION**

A.    **Lack of Allegations Regarding Personal Participation by Defendants**

Defendants first argue that Plaintiff's failure to protect claim arising from the July 2, 2022 attacks fails as a matter of law because Plaintiff does not allege that Defendants personally participated in placing Plaintiff in Facility C or were previously aware of a specific threat of an attack. (Defs.' Mot, ECF No. 25 at 12-15.) The Court agrees.

Generally, "[l]iability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Thus, a plaintiff must allege facts demonstrating "personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Barren*, 152 F.3d at 1194 ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an action which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *see also Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) ("An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'") (citation omitted). Under § 1983, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the Plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) ("The plain words of [§ 1983] impose liability . . . only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a [constitutional right].")"; *see also Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.").

The Court examines the allegations made regarding each of the defendants below.

1.    **Defendant Sharpe**

Plaintiff alleges that Defendant Sharpe, a classification and parole representative, "authorized plaintiff to be put up for transfer to a [L]evel IV SNY facility where he was

aware of the threat to plaintiff['s] safety." (Compl., ECF No. 1 at 2.)[4] Plaintiff further asserts that even though Defendant Sharpe was aware of the May 5, 2020 endorsement reflecting Plaintiff's safety concerns with RJD Facility C, he was placed in that facility in 2022, where he was attacked on July 2, 2022. (*Id.* at 3-4.) Plaintiff also alleges that Defendant Sharpe "refus[ed] to enforce the CDCR zero tolerance of STG gangs policy." (*Id.* at 4.) Finally, Plaintiff contends in his opposition that Defendant Sharpe was placed on notice in 2020 and 2021 of Plaintiff's safety concerns with all Level IV prisons. (*Id.* at 8.)

Plaintiff's Complaint does not allege that Defendant Sharpe was personally involved in placing him in Facility C. Rather, Plaintiff appears to contend in his Complaint that Defendant Sharpe bears responsibility for the July 2, 2022 attacks based on Sharpe's alleged awareness of the May 5, 2020 endorsement reflecting "enemy concerns" at Facility C and E. (*See* Compl., ECF No. 1 at 3-4; *id.* Ex. A, ECF No. 1-2 at 1.) Plaintiff has not alleged, however, that the inmates who attacked him on July 2, 2022, were on his known enemy list or that his known enemies remained housed in Facility C at the time of his 2022 transfer to that facility. Therefore, in addition to failing to demonstrate any personal participation by Defendant Sharpe in Plaintiff's transfer to Facility C, Plaintiff's allegations do not demonstrate any causal connection between Defendant Sharpe's alleged awareness of the May 5, 2020 endorsement and the July 2, 2022 attacks on Plaintiff. *See Rizzo*, 423 U.S. at 370-71; *Estate of Brooks*, 197 F.3d at 1248.

Plaintiff argues in his opposition that Defendant Sharpe was also placed on notice in 2021 of Plaintiff's safety concerns with all Level IV prisons. (Pl.'s Opp'n, ECF No. 29-2 at 8.) He refers to a June 2, 2021 Classification Committee Chrono indicating that

---

[4] Plaintiff's opposition clarifies that his allegations against Defendant Sharpe relate to Plaintiff's endorsement to both RJD Facility C and Lancaster Facility A, where he is presently incarcerated. (Pl.'s Opp'n, ECF No. 29-2 at 3, 8.)

Plaintiff had enemies at all Level IV 270 EOP institutions and thus was being referred, at that time, for transfer to a Level IV 180 EOP. (*See* Pl.'s Opp'n Ex. 8, ECF 29-8 at 8.) Any new facts or allegations contained in Plaintiff's opposition do not constitute pleadings under Rule 7(a) and thus cannot be considered on a motion to dismiss. *See Schneider*, 151 F.3d at 1197 n.1. But even if Plaintiff had included an allegation in his Complaint that Defendant Sharpe was made aware of his safety concerns with all Level IV prisons via the June 2, 2021 chrono, his failure to protect claim against Defendant Sharpe would still warrant dismissal based on a lack of allegations demonstrating Sharpe's personal involvement in placing him in Facility C, as well as the absence of any causal connection between Defendant Sharpe's alleged awareness of the 2021 chrono and the July 2, 2022 attacks on Plaintiff.

In sum, Plaintiff has failed to allege facts demonstrating that Defendant Sharpe was personally involved in placing Plaintiff in Facility C or that his actions had any connection to the alleged constitutional deprivation.

## 2.   Defendant Allison

Defendant Allison was the Secretary of the CDCR at the time the violation of Plaintiff's Eighth Amendment rights allegedly occurred. The only allegations in the Complaint regarding Defendant Allison's involvement in his claim are that "she failed to enforce her own policy regarding zero tolerance for STG gangs" and was "deliberately indifferent to [his] safety by failing to issue a[n] administrative executive directive ordering [RJD] Warden [Madden] and all other wardens within the [L]evel III and [L]evel IV [SNY] facilities . . . to enforce the CDCR policy contained in [California Code of Regulations Title 15, § 3023(a)]." (Compl., ECF No. 1 at 2, 4, 5.)

Plaintiff's Complaint, therefore, contains no allegations that Defendant Allison had any personal involvement in placing Plaintiff in Facility C or knew of a specific threat to Plaintiff's safety in Facility C prior to the July 2, 2022 attacks.

/ / /

/ / /

### 3.   Defendant Gallegos

Plaintiff asserts that Defendant Gallegos, his assigned correctional counselor, disregarded a known risk to Plaintiff's safety when "he recommended plaintiff for transfer to a [L]evel IV SNY facility that he knew would result in harm to plaintiff." (*Id.* at 2; *see also id.* at 5 ("J. Gallegos has placed plaintiff up for the classification committee to approve him for transfer back to a [L]evel IV SNY facility, disregarding the threat to his safety that awaits plaintiff if he were to return.").) Plaintiff's opposition clarifies that his allegations against Defendant Gallegos relate to Plaintiff's transfer to other prison facilities, including Mule Creek and Lancaster, after the July 2, 2022 attack, and not the transfer to RJD Facility C prior to the attack. (Pl.'s Opp'n, ECF No. 29-2 at 2; *see also id.* at 9 ("Defendant J. Gallegos [was] not a part of [Plaintiff's] move to Facility C.").) Therefore, the Complaint is devoid of any allegations that Defendant Gallegos personally participated in placing Plaintiff in Facility C or knew of a specific threat to Plaintiff's safety in advance of the July 2, 2022 attacks.

### 4.   Defendant Madden

Plaintiff's Complaint alleges that Defendant Madden, the Warden at RJD, failed in his duty to ensure that RJD Level IV SNY Facility C was free of STG gangs. (Compl., ECF No. 1 at 2.) Plaintiff also asserts that Defendant Madden "refus[ed] to enforce the CDCR zero tolerance of STG gangs policy." (*Id.* at 4.) Defendants argue that Plaintiff did not allege that Defendant Madden "personally participated in or [was] aware of Plaintiff's transfer to Facility C in 2022, or any related safety concerns." (Defs.' Mot., ECF No. 25 at 15.) The Court agrees that the allegations in Plaintiff's Complaint do not allege that Defendant Madden personally participated in placing Plaintiff in Facility C or that he was aware of a specific threat to Plaintiff's safety in Facility C in advance of the July 2, 2022 attacks.

In his opposition to the motion to dismiss, Plaintiff newly contends that he personally notified Defendant Madden of his safety concerns and of an alleged "hit" on his life prior to his placement in RJD Facility C, and that Madden failed to direct his

subordinates to investigate Plaintiff's concerns. (Pl.'s Opp'n, ECF No. 29-2 at 2, 6.) Plaintiff's opposition includes an exhibit consisting of a Classification Committee Chrono dated April 7, 2022, which endorses Plaintiff for transfer to RJD Facility C, just three months prior to the July 2, 2022 attacks. (*See id.* Ex. 27, ECF No. 29-14 at 11-13.) The chrono states: "[I]nmate is a Level-IV and was housed in a facility not consistent with placement score due to an extensive list of ENEmies documented. ICC today elects to . . . house inmate appropriately. [¶] Therefore, ICC elects to release to Facility C[.]" (*Id.* at 12.) The signatories of the chrono are E. Taboada, Recorder, and R. Madden, Warden. (*See id.* at 12-13.) A reasonable inference may be drawn from this exhibit that Defendant Madden was involved in Plaintiff's transfer to Facility C, contrary to Defendants' argument that he did not personally participate in Plaintiff's transfer to Facility C.

Nonetheless, the new factual allegations set forth in Plaintiff's opposition or contained in the exhibits attached to the opposition do not constitute pleadings under Rule 7(a) and thus cannot be considered on a motion to dismiss. *See Schneider*, 151 F.3d at 1197 n.1. But even if Plaintiff's Complaint had included factual allegations that Defendant Madden was responsible for placing him in Facility C, as reflected in the April 7, 2022 chrono, this would be insufficient to demonstrate the requisite causal connection between Madden's actions and the alleged constitutional deprivation, being attacked. *See Rizzo*, 423 U.S. at 370-71; *Estate of Brooks*, 197 F.3d at 1248. There is no allegation that Plaintiff had specific and known enemy concerns at Facility C at the time of his transfer to that facility in 2022, or that the inmates who attacked him on July 2, 2022, were his known enemies. Furthermore, a bare allegation that Defendant Madden was directly responsible for placing Plaintiff in Facility C would not sufficiently demonstrate that Defendant Madden acted with the requisite subjective intent in placing Plaintiff in that facility. *See Farmer*, 511 U.S. at 837 (providing that an official must "know[] of and disregard an excessive risk to inmate health or safety; the official must both be aware of

13

the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

For the above reasons, the Court finds that Plaintiff's Complaint fails to allege any facts demonstrating that Defendants were personally involved in placing Plaintiff in Facility C or knew of a specific threat to Plaintiff's safety in Facility C in advance of the July 2, 2022 attacks. Therefore, the Court RECOMMENDS that Defendants' motion to dismiss based on the lack of factual allegations regarding Defendants' personal participation be GRANTED.

### B.    Proposed Transfer to Level IV SNY Yard

Defendants next argue that Plaintiff's Complaint does not allege sufficient facts to support his claim for deliberate indifference arising from his proposed transfer to a Level IV SNY yard. (Defs.' Mot., ECF No. 25 at 15-16.) The Court agrees.

At the time he filed his Complaint, Plaintiff was housed in a Level III SNY facility at RJD, where there "[were] no threats to his safety" because there "[were] no openly operating STG gang members . . . like there was in the [L]evel IV SNY facilities." (Compl., ECF No. 1 at 5.) The Complaint seeks an injunction preventing Defendants from transferring him to "any [L]evel IV SNY facility that STG gang members are operating at until this matter is resolved on the merits." (*Id.* at 10.) Plaintiff alleges that Defendants Sharpe and Gallegos were directly involved in recommending him for transfer to a Level IV SNY yard. (*See id.* at 2 ("[Defendant Sharpe] . . . authorized plaintiff to be put up for transfer to a [L]evel IV SNY facility where he was aware of the threat to plaintiff['s] safety."); *see also id.* ("[Defendant Gallegos] disregarded [a] known risk to plaintiff safety when he recommended plaintiff for transfer to a [L]evel IV SNY facility that he knew would result in harm to plaintiff."). Plaintiff attributes the risk that Level IV SNY facilities present to his safety to the refusal of Defendants Sharpe, Allison, and Madden to enforce the CDCR's zero tolerance policy regarding STG gangs set forth in California Code of Regulations, Title 15, section 3023(b) ("CDCR has zero tolerance for any STG behavior within its institutions.").

1   Following the filing of this lawsuit, and after Judge Huie denied his motion for a

2   TRO, Plaintiff was transferred from RJD to a Level IV SNY yard at Lancaster, where he

3   is presently housed. (*See* Notices of Change of Address, ECF Nos. 23, 24; *see also* Order,

4   Nov. 1, 2022, ECF No. 14 at 4-5.) Absent allegations that Plaintiff faces a specific risk of

5   harm at Lancaster, and that Defendants Sharpe and Gallegos knew this at the time they

6   recommended him for transfer, Plaintiff's claims against these defendants relating to their

7   recommendations that Plaintiff be transferred from RJD to a Level IV SNY yard are

8   moot.

9   Moreover, Plaintiff has not alleged facts sufficient to state an Eighth Amendment

10  claim against Defendants Sharpe, Allison, and Madden in relation to their alleged refusal

11  to enforce the CDCR's zero tolerance policy regarding STG gangs. "To the extent that

12  the violation of a state law amounts to the deprivation of a state-created interest that

13  reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no

14  redress." *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (quoting *Sweaney v. Ada*

15  *County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997)). Accordingly, "[v]iolations of state

16  prison rules and regulations [typically] do not provide an independent cause of action."

17  *Calhoun v. Cruz*, No. 2:20-cv-2209 DB P, 2021 WL 1338776, at *4 (E.D. Cal. Apr. 9,

18  2021) (citing *Ove*, 264 F.3d at 824); *Patterson v. Harrington*, No. 1:12-cv-00440-MJS

19  (PC), 2013 WL 3212413, at *5 (E.D. Cal. June 24, 2013) (finding "no authority to

20  support . . . an implied private right of action under [California's] Title 15" and

21  explaining that "[t]he existence of regulations governing the conduct of prison employees

22  does not necessarily entitle an inmate to sue civilly for their violation")). Accordingly,

23  Plaintiff cannot state a claim for violation of the Eighth Amendment arising from

24  Defendants' alleged failure to enforce California Code of Regulations, Title 15, section

25  3023(b).

26  Accordingly, the Court RECOMMENDS that Defendants' motion to dismiss the

27  Eighth Amendment claim relating to transfer to a Level IV SNY yard and failure to

28  enforce the CDCR's zero tolerance policy regarding STG gangs be GRANTED.

### C.    Failure to Sufficiently Allege Supervisory Claims

Defendants next argue that Plaintiff fails to sufficiently allege a supervisory claim as to Defendants Sharpe, Allison, and Madden with respect to their alleged failure to enforce the CDCR's zero tolerance policy regarding STG gangs. (Defs.' Mot., ECF No. 25 at 16-20.) The Court agrees.

There is no *respondeat superior* liability under § 1983. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). To state a claim against a supervisor under § 1983, Plaintiff must allege facts to show that each defendant, "through the official's own individual actions, has violated the Constitution." *Id*. A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). A sufficient causal connection exists if, for example, the supervisor "knowingly refused to terminate a series of acts by others, which [defendant] knew or reasonably should have known would cause others to inflict a constitutional injury," (*see Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001) (citations omitted)), or if the supervisor "acquiesce[d] in [a] constitutional deprivation" or engaged in "conduct that showed a reckless or callous indifference to the rights of others," (*see Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (citations omitted)).

Here, Plaintiff has failed to allege facts to support Defendants Sharpe's, Allison's, and Madden's personal involvement in the alleged Eighth Amendment violation—failing to enforce the CDCR's zero tolerance policy—or a sufficient causal connection between their conduct and the July 2, 2022 attacks. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194; *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the

1   duties and responsibilities of each individual defendant whose acts or omissions are

2   alleged to have caused a constitutional deprivation"). Even assuming that Defendants

3   failed to enforce the CDCR's zero tolerance policy regarding STG gangs and permitted

4   STG gang activity at RJD Facility C, Plaintiff has not alleged that this inaction is linked

5   to the attacks on Plaintiff. As Defendants observe, "Plaintiff fails to allege that the failure

6   to enforce policy led to Plaintiff being attacked on July 2, 2022. In fact, based on

7   Plaintiff's Complaint, it is far more likely Plaintiff was attacked due to unnamed

8   correctional officers revealing Plaintiff was incarcerated for a sexual offense involving a

9   minor." (*See* Defs.' Mot., ECF No. 25 at 19.)

10      Accordingly, the Court RECOMMENDS that Defendants' motion to dismiss

11   Plaintiff's claims for supervisory liability against Defendants Sharpe, Allison, and

12   Madden be GRANTED.

13      **D.   Injunction Would Not Comply with the PLRA**

14      Plaintiff seeks an injunction preventing transfer to any Level IV SNY facility with

15   STG gang members and precluding transfer from RJD Facility A Level III SNY without

16   prior notice to the court. (Compl., ECF No. 1 at 10.) Defendants argue that Plaintiff's

17   requested injunction would not comply with the Prison Litigation Reform Act ("PLRA").

18   (Defs.' Mot., ECF No. 25 at 20-21.) Defendants are correct.

19      The PLRA requires courts to ensure that prospective relief in any civil action

20   related to prison conditions be "narrowly drawn, extend[] no further than necessary to

21   correct the violation of the Federal right, and [be] the least intrusive means necessary to

22   correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). The court is also

23   required to "give substantial weight to any adverse impact on public safety or the

24   operation of a criminal justice system caused by the relief." *Id.* Plaintiff's requested

25   injunction—a statewide ban on placement in a Level IV SNY facility—is overly broad.

26   As Judge Huie found in his order denying Plaintiff's motion for a TRO, "Given that the

27   State has identified a Level IV facility that does not house any of Plaintiff's known

28

enemies, Plaintiff's requested injunctive relief does not comply with the PLRA." Order, Nov. 1, 2022, ECF No. 14 at 5.

Therefore, the Court RECOMMENDS that Defendants' motion to dismiss Plaintiff's claim for injunctive relief be GRANTED.

### E.   Eleventh Amendment Immunity

Finally, Defendants move to dismiss the claims for money damages against Defendants in their official capacities as barred under the Eleventh Amendment. (Defs.' Mot., ECF No. 25 at 21.)

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars federal courts from hearing suits brought by private citizens against state governments unless the State has waived its immunity. *Id.* at 66. "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity[.]" *Brown v. California Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (citation omitted). Therefore, sovereign immunity bars Plaintiff's claims for damages against Defendants in their official capacities.

In this case, Plaintiff has sued Defendants in both their official and individual capacities. (Compl., ECF No. 1 at 2.) To the extent that Plaintiff seeks damages against Defendants in their official capacities, they are barred by the Eleventh Amendment. Accordingly, the Court RECOMMENDS that Defendants' motion to dismiss Plaintiff's claims for monetary damages against them in their official capacities be GRANTED.[5]

---

[5] Defendant Allison is no longer Secretary of the CDCR. (Defs.' Reply, ECF No. 31 at 2 n.1.) The current Secretary, Jeff Macomber, should be automatically substituted as a defendant under Federal Rule of Civil Procedure 25(d) in Defendant Allison's place for any surviving official capacity claims.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### F.      Leave to Amend

Dismissal without leave to amend is proper only in "extraordinary" cases. *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981). In light of Plaintiff's pro se status, the Court RECOMMENDS that Plaintiff be granted leave to cure the deficiencies in his claims against Defendants, if he can. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal and leave to amend shall be freely given when justice so requires.") (quotation omitted); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("Leave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts,' and should be granted more liberally to pro se plaintiffs.") (citing *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc)).

Plaintiff's First Amended Complaint ("FAC"), if permitted, must be complete in itself, without reference to his original pleading. Defendants not named and any claims not re-alleged in the FAC will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

### IV.      MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff makes a request for the appointment of counsel in his opposition. (*See* Pl.'s Opp'n, ECF No. 29 at 1.)

"[T]here is no absolute right to counsel in civil proceedings." *Hedges v. Resolution Trust Corp.*, 32 F.3d 1360, 1363 (9th Cir. 1994) (citation omitted); *see also Palmer v. Valdez*, 560 F.3d 956, 970 (9th Cir. 2009) ("Generally, a person has no right to counsel in civil actions."). District courts have discretion, however, pursuant to 28 U.S.C. § 1915(e)(1), to appoint counsel for indigent civil litigants upon a showing of "exceptional circumstances." *See Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on

the merits and the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved.'" *Id.* (italics and citation omitted). "Neither of these considerations is dispositive and instead must be viewed together." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In support of his request for the appointment of counsel, Plaintiff says only that he is "indigent and lacks knowledge adequate enough to advocate for [myself] with accuracy for the court to comprehend." (Pl.'s Opp'n, ECF No. 29 at 1.) This is insufficient to demonstrate the existence of extraordinary circumstances. Plaintiff has not shown a likelihood of success on the merits, and he has demonstrated an ability to articulate the legal and factual bases of his claims with sufficient clarity. Plaintiff's filings, including with respect to the current motion, are generally articulate and well-organized. Certainly, any pro se litigant would benefit from the assistance of counsel. Plaintiff must show, however, that he is unable to articulate his positions because of the complexity of his claims. He has not done so. *See Terrell*, 935 F.2d at 1017 (upholding district court's refusal to appoint counsel because plaintiff had "demonstrated sufficient writing ability and legal knowledge to articulate his claim").

Plaintiff has not sufficiently demonstrated "exceptional circumstances" warranting the appointment of counsel. Accordingly, his motion is DENIED.

## V.    CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss Plaintiff's Complaint [ECF No. 25] should be **GRANTED**. This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **August 14, 2023**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **August 21, 2023**. The parties are advised that the failure

/ / /

/ / /

to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

Dated:  July 28, 2023

Hon. Bernard G. Skomal
United States Magistrate Judge

22-cv-1428-AGS-BGS